Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD K. and W.K., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUECROSS BLUESHIELD of ILLINOIS, and the BOEING COMPANY CONSOLIDATED HEALTH and WELFARE BENEFIT PLAN (PLAN 635), <br><br> Defendants. | COMPLAINT |

Plaintiffs Richard K. ("Richard") and W.K., through their undersigned counsel, complain and allege against Defendants BlueCross BlueShield of Illinois ("BCBSIL") and the Boeing Company Consolidated Health and Welfare Benefit Plan (Plan 635) ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Richard and W.K. are natural persons residing in King County, Washington. Richard is W.K.'s father.

1

2. BCBSIL is an independent licensee of the nationwide BlueCross and BlueShield network of providers and was the third-party claims administrator, as well as a fiduciary, under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Richard was a participant in the Plan and W.K. was a beneficiary of the Plan at all relevant times. Richard and W.K. continue to be participants and beneficiaries of the Plan.

4. W.K. received medical care and treatment at Evoke at Entrada ("Evoke") from March 29, 2021, to July 6, 2021, and Vista Adolescent Treatment Center ("Vista") from July 7, 2021, to April 11, 2022. These are or were licensed treatment facilities located in Utah, which provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. BCBSIL denied claims for payment of W.K.'s medical expenses in connection with his treatment at Evoke and Vista.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions. Boeing, the Plan sponsor, has significant offices and business operations and many employees in Utah. As such, the Plan resides or may be found in Utah. Moreover, the treatment at issue was provided in Utah.

8. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be

responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Evoke

10. W.K. was admitted to Evoke on March 29, 2021.

11. In an Explanation of Benefits statement dated February 1, 2022, BCBSIL denied payment for W.K.'s treatment under the following justification:

    > This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

12. On July 26, 2022, Richard submitted an appeal of the denial of payment for W.K.'s treatment at Evoke. Richard reminded BCBSIL that under ERISA he was entitled to certain protections during the review process, including a full, fair, and thorough review of the denial conducted by appropriately qualified reviewers whose identities were clearly disclosed, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

13. He asked that the reviewer be knowledgeable concerning generally accepted standards of medical practice and clinical best practices for outdoor behavioral health programs in the State of Utah and that they be trained in the details of MHPAEA to appropriately address his arguments. He also requested any documentation including internal notes and reports related to the decision to deny payment.
14. He argued that coverage was available under the terms of the insurance plan. He wrote that Evoke was a licensed outdoor behavioral health facility and compliant with governing state regulations. In addition, he contended that Evoke met the definition of a "provider" in the insurance policy.
15. Richard expressed concern that BCBSIL's denial was a violation of MHPAEA. He wrote that MHPAEA compelled insurers to ensure that benefits for behavioral health services were offered at parity with benefits for analogous medical or surgical services.
16. He identified skilled nursing, subacute rehabilitation, inpatient habilitative, and inpatient hospice facilities as some of the medical or surgical analogues to the treatment offered at Evoke.
17. Richard argued that BCBSIL was limiting the availability of outdoor behavioral health services by imposing limitations on facility type, provider specialty, or other criteria designed to limit the scope of benefits in a manner that targeted for exclusion outdoor behavioral healthcare providers of mental health and substance use disorder treatment.
18. Richard pointed out that BCBSIL excluded coverage for "wilderness programs" which was a limitation only applied to mental health services and which excluded from coverage treatment which would otherwise be a covered benefit under the Plan.

19. Richard also argued that BCBSIL was in violation of MHPAEA by failing to provide an adequate or appropriate amount of in-network mental health providers in any sort of proximity to his home.

20. Richard pointed out that he would have had little trouble receiving in-network hospice or skilled nursing care within one-hundred miles of his home, but his options for mental health treatment in a similar radius were severely limited.

21. Richard pointed out that BCBSIL was excluding a whole class of mental health providers by refusing to approve "wilderness" care. He argued that this was a limitation on provider specialty which violated MHPAEA as no similar exclusion was applied to analogous medical or surgical care.

22. He requested BCBSIL to perform a parity compliance analysis and to provide him with physical copies of the results of this analysis.

23. In addition he asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

24. In a letter dated August 25, 2022, BCBSIL upheld the denial of payment for W.K.'s treatment. The letter stated that the denial would be maintained as:

> The member submitted an appeal disputing the denial of their sons [sic] claim for wilderness therapy. The member believes this service should be covered. After a

review of the submitted information and the member's benefit book, we have determined the denial is correct. The member's benefit book stipulates all benefits available to the member. There is a specific exclusion for this service. We regret that our determination could not be more favorable.

25. In a letter dated August 30, 2022, BCBSIL claimed that it was providing the documentation Richard had requested, however this documentation appears to be limited to the level one appeal materials Richard had provided, a copy of the summary plan description and supplemental materials related to that document, and the denial correspondence Richard had already received. None of the other materials Richard requested were provided.

**Vista**

26. W.K. was admitted to Vista on July 7, 2021. BCBSIL denied payment for this treatment.

27. On November 3, 2022, Richard submitted a level one appeal of the denial of payment for W.K.'s treatment.

28. Richard wrote that upon W.K.'s admission, Vista attempted to contact BCSBIL to obtain preauthorization, but was told that preauthorization would be denied as BCBSIL required residential treatment centers to provide 24-hour nursing care which Vista did not do. BCBSIL refused to provide a written notice of this denial.

29. Richard then stated that he received Explanation of Benefits statements which stated that coverage had been denied due to:

> This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

and

> Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines.

6

30. Richard reminded BCBSIL that it had a fiduciary duty to act in his best interest. He asked BCBSIL to carefully consider all the information he provided.

31. Richard wrote that he had received some of the documentation he requested, but he was concerned that the materials provided by BCBSIL were incomplete and out of date, especially given that he could not find any language supporting BCBSIL's justification for the denial. He asked BCBSIL to ensure that he was provided with a complete copy of the Plan Documents he had requested.

32. Richard expressed confusion and concern that the documentation he had in his possession did not contain any of the requirements BCBSIL stated were necessary for residential treatment to be approved. He pointed out that Vista was a licensed residential treatment facility that was operated in compliance with governing state regulations as well as the terms of the insurance contract.

33. In a letter dated December 2, 2022, BCBSIL upheld the denial. The letter signed by Appeals Specialist II Traci Z., stated that:

> The facility, Ut-Tex, Inc. doing business as Vista Adolescent Treatment Center, is a non-network provider. Under the terms of the benefit agreement, members who seek services with providers who are not associated with their plan are financially responsible for remaining charges, after the benefit has been applied.
>
> The facility is a licensed residential treatment facility. However, the facility does not meet our standards of a residential treatment facility because there is no doctor or medical staff in house 24 hours a day, seven days a week.
>
> According to our records, the claims denied correctly. No coverage is available for the residential treatment services rendered on 07/07/2021 through 04/11/2022.

34. The letter then cited to language from the summary plan description but did not identify which specific terms of the cited language were meant to apply. The cited language did not appear to make any reference to residential treatment services. Nor did it identify any

7

language in the summary plan description stating that 24/7 onsite "doctor or medical staff" was required for residential treatment centers.

35. On January 3, 2023, Richard submitted a level two appeal of the denial of payment for W.K.'s treatment. He contended that BCBSIL had not respected his rights under ERISA. He wrote that despite stating that Vista "does not meet our standards," BCBSIL failed to identify any provision in the governing plan documents to support this assertion.

36. He stated that BCBSIL did quote some language from the governing plan documents, but none of these excerpts seemed to have any relevance to BCBSIL's denial rationale.

37. Richard pointed out that the 24/7 requirement in his summary plan description only applied to hospital care. He wrote that Vista was not a hospital, nor had it ever purported itself to be.

38. He contended that any requirements contrary to the explicit terms of his summary plan description were superseded by that document, and that any "representations contrary to the Plan or the Plan document are not binding."

39. He argued that BCBSIL could not invent reasons to deny payment based on internal policies or protocols but was instead wholly bound by the terms of the actual insurance plan.

40. Richard suggested that the review he had received was not appropriately thorough and that the reviewer seemed to be unqualified to review the claim in the first place. He asked BCBSIL to conduct the next review in accordance with its obligations under ERISA and its fiduciary duty to act in his best interest. He again asked for a copy of the Plan Documents.

41. In a letter dated January 30, 2023, BCBSIL upheld the denial of payment. The decision was attributed to an appeals committee with representatives from the professional reimbursement, marketing, clinical operations, customer service, and medical management departments.

42. The letter does not identify any of these individuals or indicate that they have any level of clinical expertise or qualifications which would let them intelligently respond to Plaintiffs' arguments.

43. The letter briefly summarized the arguments raised in the appeal process and then stated that the procedure reviewed was code H0019 "Alcohol and/or drug services." The letter then simply quoted several pages from the summary plan description without identifying which provisions, if any, were meant to apply.

44. Some of the quoted language again included the Plan's definition of a hospital, but no effort was made to address the Plaintiffs' allegations that this language was not applicable to residential treatment care and should not have been used.

45. In fact, the letter appears to make no attempt at all to rebut or even address any of Plaintiffs' arguments.

46. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

47. The denial of benefits for W.K.'s treatment was a breach of contract and caused Richard to incur medical expenses that should have been paid by the Plan in an amount totaling over $170,000.

//

//

# FIRST CAUSE OF ACTION

## (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

48. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSIL, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

49. BCBSIL and the Plan failed to provide coverage for W.K.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

50. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

51. The denial letters produced by BCBSIL do little to elucidate whether BCBSIL conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. BCBSIL failed to substantively respond to the issues presented in Richard's appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

52. In fact, despite Richard's clear and repeated allegations that BCBSIL was denying payment based on requirements which were not part of the terms of the Plan, BCBSIL failed or refused to produce any evidence to support its contention that 24-hour onsite doctor or medical presence was required for residential treatment services to be covered.

53. Inasmuch as the insurance policy does bar any of the treatment W.K. received, this exclusion violates MHPAEA as set forth in the second cause of action infra and is unenforceable.

54. BCBSIL and the agents of the Plan breached their fiduciary duties to W.K. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in W.K.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of W.K.'s claims.

55. The actions of BCBSIL and the Plan in failing to provide coverage for W.K.'s medically necessary treatment are a violation of the terms of the Plan and its facility eligibility criteria.

56. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under both causes of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

57. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSIL's fiduciary duties.

58. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical and surgical disorders.

59. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

60. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

61. The facility eligibility criteria used by BCBSIL for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the facility eligibility criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

62. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for W.K.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

63. When BCBSIL and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

64. BCBSIL and the Plan evaluated W.K.'s mental health claims using facility eligibility criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

65. BCBSIL denied W.K.'s outdoor behavioral health treatment based on an exclusion for wilderness care.

66. Treatment at licensed wilderness programs such as Evoke is not experimental or investigational, and in fact the National Uniform Billing Committee, the organization responsible for developing and issuing revenue codes for services, has assigned wilderness programs their own separate revenue code.

67. There are no analogous medical or surgical facilities which have been assigned a revenue code that are categorically excluded by BCBSIL.

68. The treatment at Evoke was provided by a team of clinical professionals with appropriate certifications and professional qualifications and would not have been categorically denied if it were rendered anywhere but at an outdoor behavioral health program like Evoke.

69. The Plan purports to rely on generally accepted standards of medical practice when it evaluates the eligibility of providers.

70. During the timeframe at issue in this case, Evoke and Vista were licensed treatment facilities and provided treatment in a manner that complied with generally accepted standards of medical practice.

71. Generally accepted standards of medical practice are largely formed and enforced by the appropriate licensing, regulatory, and accreditation entities.

72. In the case of residential treatment for mental health and substance use disorders, no licensing, regulatory, or accreditation entities require 24-hour onsite doctor or medical services as part of generally accepted standards of care.

73. Through its imposition of requirements which are stricter than those dictated by generally accepted standards of care as reflected in the licensing, regulatory, and accreditation entity requirements, BCBSIL violates MHPAEA.

74. BCBSIL violates MHPAEA because it relies on generally accepted standards of care and the standards of licensing, regulatory, and accreditation entities to develop its facility or program eligibility guidelines for intermediate level medical or surgical facilities but holds outdoor behavioral healthcare programs and residential treatment centers to a stricter standard beyond what is advised and considered appropriate by the relevant licensing, regulatory, and accreditation entities.

75. At Vista, BCBSIL continued to deny payment without addressing the allegation that the plain language of the insurance plan contained no requirement for 24-hour onsite doctoral or medical presence for residential treatment care. BCBSIL does not restrict benefits for medical or surgical treatment by imposing similar extracontractual requirements.

76. The failure by BCBSIL and the Plan to provide adequate network facilities for sub-acute inpatient treatment of mental health and substance use disorders compared to the network facilities for sub-acute inpatient treatment of medical and surgical disorders also creates a coverage disparity that violates MHPAEA.

77. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the program and facility eligibility criteria utilized by the Plan and BCBSIL, as written or in operation, use processes, strategies, standards, or other factors to limit

coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

78. BCBSIL and the Plan did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that BCBSIL and the Plan were not in compliance with MHPAEA.

79. In fact, despite Richard's request that BCBSIL and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, BCBSIL and the Plan have not provided Richard with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, BCBSIL and the Plan have not provided Richard with any information about the results of this analysis.

80. The violations of MHPAEA by BCBSIL and the Plan are breaches of fiduciary duty and give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the facility eligibility criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

81. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for W.K.'s medically necessary treatment at Evoke and Vista under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 28th day of July, 2023.

By    <u>s/ Brian S. King</u>
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
King County, Washington