Gwendolyn C. Payton (USB # 18267)
Sean P. Murphy
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Telephone:    (206) 626-7714
E-mail:        gpayton@kilpatricktownsend.com

*Attorneys for Defendant Blue Cross Blue Shield of Illinois*

Eric P. Mathisen (USB # 18810)
Ogletree Deakins
15 West Temple Street, Suite 950
Salt Lake City, Utah 84101
Telephone:    (801) 658-6048
E-mail:        eric.mathisen@ogletree.com

*Attorneys for Defendant the Boeing Company*
*Consolidated Health and Welfare Benefit Plan (Plan 635)*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD K. and W.K.,<br><br>    Plaintiffs,<br><br>v.<br><br>BLUECROSS BLUESHIELD of ILLINOIS, and the BOEING COMPANY CONSOLIDATED HEALTH and WELFARE BENEFIT PLAN (PLAN 635),<br><br>    Defendants. | **Case No. 2:23-CV-00491-TC**<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**Judge Tena Campbell** |

### I.    INTRODUCTION

Defendants Blue Cross Blue Shield of Illinois ("BCBSIL") and the Boeing Company Consolidated Health and Welfare Benefit Plan (Plan 635) (the "Plan") move this Court to dismiss Plaintiffs Richard K. and W.K.'s claim alleging violations of the Mental Health Parity and

Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. §1132(a)(3).

Plaintiffs' Complaint alleges two causes of action: (1) a claim to recover benefits pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1132(a)(1)(B) (the "Benefits Claim"); and (2) alleged violations of the Parity Act (the "Parity Act Claim"). Defendants seek dismissal of Plaintiffs' Parity Act Claim and their Benefits Claim for W.K.'s stay at Evoke.

Plaintiffs' Parity Act Claim should be dismissed for two reasons: *First*, Plaintiffs fail to allege any facts in support of their Parity Act Claim. *Second*, because Plaintiffs' alleged injury is only in the past, and a damages recovery under their Benefits Claim would make them whole, they are not entitled to claim equitable relief—the only relief available under the Parity Act.

The Court should dismiss Plaintiffs' Benefits Claim as to Evoke as untimely. Plaintiffs filed their Complaint more than 180 days after BCBSIL decided their appeal and, therefore, the Complaint is untimely under the Plan's suit limitations period.

## II.    PLAINTIFFS' ALLEGATIONS[1]

### A.    The Parties.

Richard K. was a participant in the Plan and his son, W.K., was a beneficiary. Complaint, ECF No. 1 ¶3. The Plan is a self-funded employee welfare benefit plan covered by ERISA. *Id.* BCBSIL was the Plan's third-party claims administrator. *Id.* ¶2.

### B.    The Facilities.

Plaintiffs claim benefits for W.K.'s enrollment at two facilities located in Utah: Evoke at

---

[1] Defendants assume Plaintiffs' factual allegations are true solely for the purposes of this Motion to Dismiss, and not for any other purpose.

Entrada ("Evoke") and Vista Adolescent Treatment Center ("Vista"). *Id.* ¶4. W.K. stayed at Evoke from March 29 to July 6, 2021, and at Vista from July 7, 2021 to April 11, 2022. *Id.*

## C.    The Plan Provides Coverage for Residential Treatment Centers that Meet the Plan's Requirements.

The Plan covers residential treatment centers that meet the Plan's coverage requirements. The Summary Plan Description ("SPD") sets forth the Plan's coverage requirements. Ex. 1 (SPD).[2] The SPD states that the Plan only covers "covered preventative care services and medically necessary services and supplies as described below." Ex. 1 at R8401. The SPD states that the Plan "covers mental health treatment when it is medically necessary and is received from any provider contracted with the plan or from an eligible provider, including any licensed … Hospital or treatment facility (as determined by the state agency that licenses mental health and/or substance use disorder treatment facilities)." *Id.* at R8425. The SPD defines "provider" as "a physician, hospital, health care facility, dentist, or other medical professional or specialist that delivers health care treatment and/or services within the scope of his or her license (or certification, as applicable)." *Id.* at R8361; R8446.

The SPD's section titled "What the Plan Does Not Cover" lists "[s]ervices and supplies that are not covered," *id.* at R8433-37, and includes the following:

---

[2] "When evaluating a Rule 12(b)(6) motion, the court 'may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference'" and "when a document 'is referred to in the complaint and is central to the plaintiff's claim[.]'" *John R. v. United Behav. Health*, No. 2:19-CV-35-TC, 2019 WL 6255085, *4 (D. Utah Nov. 22, 2019) (quoting *Brokers' Choice of Am.*, *Inc.*, *v. NBC Universal*, *Inc.*, 861 F.3d 1081, 1103 n.22 (10th Cir. 2017) and *GFF Corp. v. Associated Wholesale Grocers*, *Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). The Court may consider the SPD because the allegations in Plaintiffs' Complaint "are expressly based on the" SPD's terms and necessarily relies on it. *Id.*; *see also*, *e.g.*, ECF No. 1 ¶49 (allegations regarding "the express terms of the Plan….").

- Services received from a provider that does not meet the licensing (or certification, as applicable) requirements of a provider of the specific service.
…
- Services or supplies not medically necessary (as defined in the "Definitions" section) for treatment of an illness or injury, unless otherwise listed as covered.
…
- Wilderness programs.

*Id.* at R8436-37.

**D.    BCBSIL Determined that W.K.'s Stay at Evoke was Not Covered Under the Terms of the Plan.**

BCBSIL denied coverage for W.K.'s stay at Evoke based on the Plan's exclusion of wilderness programs.  ECF No. 1 ¶11.  Plaintiffs submitted a Level I appeal of BCBSIL's decision on July 26, 2022.  *Id.* ¶12.  In their appeal, Plaintiffs argued that BCBSIL should cover W.K.'s stay at Evoke because the facility "was a licensed outdoor behavioral health facility and compliant with governing state regulations."  *Id.* ¶14.  Plaintiffs also claimed that Evoke met the Plan's definition of "provider."  *Id.*

On August 25, 2022, BCBSIL sent Plaintiffs a letter upholding its decision.  *Id.* ¶24. BCBSIL wrote as follows:

> The member submitted an appeal disputing the denial of their sons claim for wilderness therapy.  The member believes this service should be covered.  After a review of the submitted information and the member's benefit book, we have determined the denial is correct.  The member's benefit book stipulates all benefits available to the member.  There is a specific exclusion for this service.  We regret that our determination could not be more favorable.

*Id.* ¶24.  Plaintiffs were entitled to but did not submit a Level II appeal.

**E.    BCBSIL Determined that W.K.'s Stay at Vista was Not Covered Under the Terms of the Plan.**

BCBSIL denied coverage for W.K.'s stay at Vista after determining that the facility did

not provide 24-hour nursing care, as required by the Plan.  ECF No. 1 ¶26.  Plaintiffs submitted a

Level I appeal on November 3, 2022.  *Id.* ¶27.  The appeal acknowledged that BCBSIL denied

Plaintiffs' preauthorization request because the Plan "required residential treatment centers to

provide 24-hour nursing care which Vista did not do."  *Id.* ¶28.  Although Plaintiffs allege that

"BCBSIL refused to provide a written notice of this denial" of preauthorization, *id.*, they

acknowledge that BCBSIL did issue an Explanation of Benefits ("EOB"), which explained as

follows:

> This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

> and

> Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines.

*Id.* ¶29.  Plaintiffs' Level I appeal argued that BCBSIL should have covered Vista because it "was

a licensed residential treatment facility that was operated in compliance with governing state

regulations as well as the terms of the insurance contract."  *Id.* ¶32.  The Complaint does not allege

that Vista provided in-house medical staff 24-hours a day.  *See generally*, ECF No. 1.

On December 2, 2022, BCBSIL sent Plaintiffs a letter upholding its conclusion.  *Id.* ¶33.

BCBSIL explained as follows:

> The facility is a licensed residential treatment facility.  However, the facility does not meet our standards of a residential treatment facility because there is no doctor or medical staff in house 24 hours a day, seven days a week.

> According to our records, the claims [were] denied correctly.  No coverage is available for the residential treatment services rendered on 07/07/2021 through 04/11/2022.

*Id.* ¶33.

On January 3, 2023, Plaintiffs submitted a Level II appeal.  *Id.* ¶35.  Plaintiffs claimed that the "24/7 requirement in his summary plan description only applied to hospital care."  *Id.* ¶37.  On January 30, 2023, BCBSIL sent Plaintiffs a letter upholding its conclusion, and again noted the Plan's 24-hour nursing requirement.  *Id.* ¶¶41-44.

Under the Plan, Plaintiffs were then entitled to seek external review from an independent reviewer mandated by the Affordable Care Act that would be binding on BCBSIL.  Ex. 1 at R8333-35.  Plaintiffs did not exercise their right to seek further review, and instead filed this lawsuit.

### F.    Plaintiffs' Claims.

For their first cause of action—the Benefits Claim—Plaintiffs seeks to recover "the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B)[.]"  ECF No. 1 ¶9.  Plaintiffs claim entitlement to "[j]udgment in the total amount that is owed for W.K.'s medically necessary treatment at Evoke and Vista under the terms of the Plan, plus pre and post-judgment interest to the date of payment."  *Id.*, Prayer for Relief, ¶1.

Plaintiffs' second cause of action—the Parity Act Claim—alleges BCBSIL violated the Parity Act by denying reimbursement for W.K.'s stay at Evoke and Vista while offering "[c]omparable benefits" for "medical/surgical treatment" provided in "subacute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."  *Id.* ¶62.

Plaintiffs allege BCBSIL and the Plan violate the Parity Act in three ways.  First, Plaintiffs allege the Plan's wilderness exclusion violates the Parity Act because this "limitation only applied to mental health services[.]"  *Id.* ¶18.

Second, Plaintiffs allege that the Plan's 24-hour nursing and physician care requirement exceeds "generally accepted standards of medical practice" for residential treatment centers because "no licensing, regulatory, or accreditation entities require 24-hour onsite doctor or medical services as part of generally accepted standards of care." *Id.* ¶¶71-72. Plaintiffs further claim that the Plan "contained no requirement for 24-hour onsite doctoral or medical presence for residential treatment care[,]" and "does not restrict benefits for medical or surgical treatment by imposing similar extracontractual requirements." *Id.* ¶75.

Finally, Plaintiffs claim the Plan violates the Parity Act because it does not provide "adequate network facilities for sub-acute inpatient treatment of mental health and substance use disorders compared to the network [of] facilities for sub-acute inpatient treatment of medical and surgical disorders…." *Id.* ¶76. Plaintiffs assert that they "would have had little trouble receiving in-network hospice or skilled nursing care within one-hundred miles of [their] home, but [their] options for mental health treatment in a similar radius were severely limited." *Id.* ¶20. Plaintiffs' Parity Act Claim seeks a litany of equitable relief. *Id.* ¶¶80(a)-(h).

## III.    ARGUMENT

### A.    Plaintiffs Fail to State a Parity Act Claim.

#### 1.    Plaintiffs must allege BCBSIL and the Plan apply more restrictive treatment limitations to mental health services than to analogous medical/surgical treatments.

To state a Parity Act claim, Plaintiffs must allege that BCBSIL and the Plan apply more restrictive treatment limitations to mental health services than for analogous medical/surgical treatments.[3] This Court has held that a Parity Act claim must: "(1) identify a specific treatment

---

[3] The Parity Act prohibits health plans that cover both medical-surgical and mental health

limitation on mental health benefits; (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits; and (3) establish a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analogue." *Heather E. v. Cal. Physicians' Servs.*, No. 2:19-CV-415, 2020 WL 4365500, *3 (D. Utah July 30, 2020).

To survive dismissal of their Parity Act Claim, Plaintiffs must allege "plausible grounds to infer" that BCBSIL and the Plan applied a more-restrictive treatment limitation to mental health/substance disorder benefits than to analogous medical/surgical benefits. *M.N. v United Healthcare Ins.*, No. 2:18-CV-00710-DBB-CMR, 2020 WL 1644199, *6 (D. Utah Apr. 2, 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 2.    Plaintiffs' Parity Act claim fails to plausibly allege a covered medical/surgical analogue to wilderness programs.

Plaintiffs' Parity Act Claim with respect to Evoke fails because they do not plausibly allege a medical/surgical analogue to wilderness or "outdoor behavioral healthcare" programs. "To

---

treatments from imposing "separate treatment limitations that are only applicable with respect to mental health or substance use disorder benefits." 29 U.S.C. §1185a(a)(3)(A)(i)-(ii). The term "treatment limitation" includes "quantitative" and "non-quantitative" limitations. *Richard K. v. United Behav. Health*, No. 18-CV-6318-GHW-BCM, 2019 WL 3083019, *10 (S.D.N.Y. June 28, 2019). "Quantitative limitations 'are expressed numerically (such as 50 outpatient visits per year).'" *Id.* "Nonquantitative treatment limitations … 'otherwise limit the scope or duration of benefits for treatment,'" and include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided." *Id.* Plaintiffs' Complaint does not allege any quantitative limitations that violate the Parity Act. *See* ECF No. 1. Their Parity Act Claim is limited to nonquantitative limitations.

survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services." *Daniel R. v. UMR*, No. 2:19-CV-00069, 2020 WL 1188144, at *7 (D. Utah Mar. 12, 2020). "Without some facts about … analogous medical treatment coverage, other than labels and conclusions, there can be no comparison and hence no claim." *M.N.*, 2020 WL 1644199, at *6. Plaintiffs allege that skilled nursing, inpatient rehabilitation, and inpatient hospice facilities are analogous to wilderness facilities. ECF No. 1 ¶62. Plaintiffs allege no facts that would allow the Court to draw the inference that the medical/surgical facilities they identify are analogous to wilderness facilities.

The case law uniformly holds that residential treatment centers—and not wilderness programs—are analogous to skilled nursing facilities and inpatient rehabilitation facilities, and thus there is no Parity Act violation if the plan covers residential treatment centers.[4] *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 824 (N.D. Ill. 2019) (a plan that excludes wilderness programs does not violate the Federal Parity Act if it covers residential treatment centers); *A.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 841-42 (S.D. Ohio 2019) (same); *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 57-58 (W.D.N.Y. 2020) (same); *Peter M. v. Aetna Health and Life*

---

[4] While BCBSIL agrees that skilled nursing facilities and inpatient rehabilitation are analogous to residential treatment centers, hospice is not. *See, e.g.*, *Charles W. v. United Behav. Health*, No. 2:19-CV-829-TC, 2019 WL 6895331, *5 n.3 (D. Utah Dec. 18, 2019) (noting that, as a comparator to residential treatment facilities, the "Plaintiffs' analogy to hospice care is not plausible.") The Parity Act's implementing regulations provide skilled nursing and inpatient rehabilitation facilities as examples of "intermediate level" medical/surgical analogues to residential treatment, but do not include hospice. *See Final Rules Under Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008*, 78 Fed. Reg. 68240, 68246-47 (Nov. 13, 2013). The Final Rules state that the classifications of "intermediate level" treatments were not intended to be innovative, and skilled nursing and inpatient rehabilitation facilities are the only facilities the Final Rules *require* be treated as comparable to residential treatment centers. *Id.* at 68260. Plaintiffs allege no facts plausibly stating that residential treatment and hospice are analogous.

*Ins. Co.*, 554 F. Supp. 3d 1216, 1227-28 (D. Utah 2021) (dismissing Parity Act claim where plan contained wilderness exclusion).  That is the case here: the Plan covers residential treatment centers but not wilderness programs.  Ex. 1 at R8436-37.

*Alice F.* is directly on point.  There, as here, the health plan covered residential treatment centers and skilled nursing facilities.  *Alice F.*, 367 F. Supp. 3d at 824, 828.  The plaintiff alleged that the plan's wilderness program exclusion violated the Parity Act because it amounted to a limitation that did not also apply to skilled nursing facilities.  *Id.* at 828.  The court rejected this argument, emphasizing that wilderness programs are distinct from residential treatment centers:

> As to this Plan, the Court concludes that there is no Parity Act problem.  Contrary to Plaintiff's argument, wilderness programs do not include programs that could be considered RTCs [residential treatment centers] but for their location.  Instead, as explained earlier, RTCs are defined as one type of program, offering therapeutic intervention in a controlled environment, medical monitoring, and 24-hour onsite nursing.  By contrast, wilderness programs offer a different service providing merely a supportive environment and methods to address social needs.  Accordingly, there is no geographic limitation on RTCs that is not present in the Plan's coverage of SNFs [skilled nursing facilities].

*Id*.  Thus, the plan complied with the Parity Act because it covered both residential treatment centers and skilled nursing facilities.

Likewise, the court in *A.G.* held that the health plan did not violate the Parity Act by excluding wilderness programs because the plan covered residential treatment centers:

> Plaintiff alleges that the Plan violates the Parity Act because it includes services at intermediate facilities such as rehabilitation hospitals and skilled nursing facilities, but not "wilderness camps."  But the Plan does explicitly cover services at residential treatment centers – for both medical and mental health services – it simply does not cover any services performed at wilderness camps.  A residential treatment center is an intermediate facility analogue to a rehabilitation hospital and skilled nursing facility…. [B]ecause the Plan both provides benefits for services performed at residential treatment centers for medical/surgical patients and for mental health conditions, the Plan does not contain a discriminatory limitation.

*A.G.*, 363 F. Supp. 3d at 841-42.

*Julie L.* also came to the same conclusion: if the plan covers residential treatment centers, it does not violate the Parity Act:

> [C]ognizable Parity Act claims exist where plans categorically exclude therapies or residential treatment facilities which, in effect, are exclusions only applicable to mental health conditions…. In contrast, here, Defendants did not categorically exclude coverage for residential mental health treatment. As such, these cases do not support Plaintiffs' contention that a disparate result alone [in excluding wilderness programs] constitutes a Parity Act violation.

*Julie L.*, 447 F. Supp. 3d at 57-58.

This Court has routinely dismissed Parity Act claims where the plaintiff "failed to sufficiently identify a comparison or analogue to wilderness treatment in the medical and surgical fields of treatment." *Roy C. v. Aetna Life Ins. Co.*, No. 2:17-CV-1216, 2018 WL 4511972, *3 (D. Utah Sept. 20, 2018); *see also J. v. Premera Blue Cross*, No. 2-22-CV-00325-HCN, Dkts. 23 and 24 (D. Utah Apr. 25, 2023) (oral ruling dismissing Parity Act claim because the plaintiffs failed to allege facts that would support a reasonable inference that wilderness facilities were analogous to skilled nursing, rehabilitation, and inpatient hospice facilities); *B. v. BlueCross BlueShield of Ill.*, No. 2:22-CV-336-HCN, Dkts. 27 and 27 (D. Utah May 23, 2023) (same); *H. v. BlueCross BlueShield of Ill.*, No. 2:21-CV-00403-HCN-DAO, Dkts. 22 and 23 (D. Utah Apr. 19, 2022) (same). The same result is required here.

### 3.    Plaintiffs fail to allege the Plan imposes more stringent requirements for residential treatment centers than for analogous medical/surgical treatments.

The Court should dismiss Plaintiffs' Parity Act Claim as to Vista also because they fail to plausibly allege that the Plan imposes more stringent treatment limitations for residential treatment centers than for analogous medical/surgical services.

      **a.**     **Plaintiffs plead no facts plausibly alleging that the Plan's 24-hour onsite nursing requirement for residential treatment centers violates the Parity Act.**

Plaintiffs must plead facts "regarding how [BCBSIL] handles medical and surgical claims" in a way that is less stringent than the way BCBSIL handles mental health claims. *Michele T. v. Oxford*, 2:19-CV-507-TC, 2020 WL 4596961, *5 (D. Utah Aug. 11, 2020) (dismissing Parity Act claim). Plaintiffs' Complaint identifies skilled nursing, rehabilitation, and inpatient hospice facilities as the medical/surgical analogues to residential treatment centers. ECF No. 1 ¶62. But the Complaint lacks any factual allegations about how BCBSIL handles claims for the analogous medical/surgical services Plaintiffs identify. Plaintiffs' Complaint therefore fails to plausibly state that BCBSIL discriminates against mental health residential treatment in favor of analogous medical/surgical care.

Plaintiffs plead no facts plausibly alleging that the Plan's 24-hour onsite nursing requirements for residential treatment centers violates the Parity Act. This is because the Plan imposes the same 24-hour onsite nursing requirement for residential treatment centers as it does for skilled nursing, rehabilitation, and inpatient hospice facilities.

The Plan states that any "provider" of services—including residential treatment centers, skilled nursing, rehabilitation, and inpatient hospice facilities—must "deliver[] health care treatment and/or services within the scope of his or her license (or certification, if applicable)." Ex. 1 at R8446; *see also id.* at R8437 (excluding coverage for "[s]ervices received from a provider that does not meet the licensing (or certification, as applicable) requirements of a provider of the specific service"). Utah's licensing requirements for all of these facilities state that they must provide 24-hour care and employ professional staff including registered nurses. *See, e.g.*, Utah

Admin. Code R432-101-22(2), (4), and (6) ("'Residential Treatment' means a 24-hour group living environment…"), Utah Admin. Code R432-101-22(4) ("Residential treatment staff shall have specialized training in the area of psychiatric treatment" and include a licensed physician, social worker, psychologist, registered nurse, and staff "supervised by a health care practitioner"). Residential treatment centers are regulated as "Specialty Hospitals" that, under Utah law, must provide "24 hour inpatient care" and "continuous registered nursing supervision and other nursing services." Utah Admin. Code R432-101-4(2)(a)(ii)-(vi); *see also* Utah Admin. Code R432-101-9(3) ("Nursing staff standards shall comply with R432-100-12."); Utah Admin. Code R432-100-14(2) (formerly R432-100-12, requiring "qualified registered nurses are on duty 24 hours per day….")

Likewise, Utah law requires skilled nursing facilities provide "24-hour skilled nursing services." Utah Admin. Code R432-150-5(2). Utah law requires "Specialty Hospital Rehabilitation" facilities meet Utah's regulations governing "Nursing Care Services" standards, Utah Admin. Code R432-103-8(1)(c), which in turn require that "qualified registered nurses are on duty 24 hours per day[.]" Utah Admin. Code R432-100-14(2). And Utah law requires that inpatient hospice facilities "provide competent hospice trained nursing staff 24 hours per day" and that a "hospice trained registered nurse shall be on duty 24 hours per day[.]" Utah Admin. Code. R432-750-22(1)-(2).

This Court has dismissed Parity Act claims where, as here, a plan incorporates state licensing requirements for residential treatment centers and analogous medical/surgical services where the licensing requirements demonstrate parity. *See*, *e.g.*, *J.W. v. Bluecross Blueshield of Texas*, No. 1:21-CV-21, 2022 WL 2905657, *6 (D. Utah July 22, 2022) ("federal regulations make

clear that a plan does not violate the Parity Act by expressly requiring certain requirements for mental health treatment when those same requirements are mandated by state licensing for analogous medical services." (citing 29 C.F.R. §2590.712(c)(4)(iii)(ex.7)); *H. v. BlueCross BlueShield of Illinois*, No. 2:21-CV-00403-HCN-DAO, Dkts. 22 and 23 (D. Utah Apr. 19, 2022) (oral ruling dismissing Parity Act claim where Utah licensing requirements for skilled nursing, inpatient rehabilitation, and hospice facilities require 24-hour onsite nursing in parity with plan's residential treatment center requirements); *B. v. Blue Cross Blue Shield of Illinois*, No. 2:22-CV-00336-HCN-DAO, Dkts. 26 and 27 (D. Utah May 23, 2023) (same, based on Oregon licensing requirements). Plaintiffs' Parity Act Claim fails for the same reason.

> **c.  Plaintiffs plead no facts plausibly alleging the Plan's requirements for mental health benefits "deviate from generally accepted standards of medical practice."**

Plaintiffs allege the Plan's requirements for mental health claims "deviate from generally accepted standards of medical practice." ECF No. 1 ¶64; *see also id.* ¶74 (alleging BCBSIL violates the Parity Act "because it relies on generally accepted standards of care … to develop its facility or program eligibility guidelines for intermediate level medical or surgical facilities but holds residential treatment to a stricter standard….") Plaintiffs' conclusory claims regarding "generally accepted standards of medical practice" are unsupported by any factual allegations and do not plausibly state a Parity Act claim.

Indeed, Plaintiffs' allegation that the Plan's requirements that residential treatment centers provide doctor and medical staff in house 24 hours a day, seven days a week "deviate from generally accepted standards of medical practice" is fatal to their Parity Act claim. Plaintiffs admit that BCBSIL requires 24-hour onsite doctor and medical staff for both residential treatment centers

and the medical/surgical analogues Plaintiffs identified.  This admission is reason alone for this Court to dismiss Plaintiffs' Parity Act Claim.  Apparently, Plaintiffs' argument is that 24-hour doctor and medical staff requirements are the standard of care for the medical/surgical analogues but not residential treatment centers.  Were this true, residential treatment centers would not be analogous to any medical/surgical analogue.  But, Utah law has established the standard of care for residential treatment centers by requiring that they provide 24-hour nursing care.  Utah licensing regulations require residential treatment facilities provide 24-hour care and employ professional staff including registered nurses.  *See*, *supra* 12-13.

This Court has held that a complaint should be dismissed where it alleges "only conclusory statements about the alleged as-applied discrimination involving the comparator individuals or group."  *M.N.*, 2020 WL 1644199 at *5.  In *M.N.*, the Court held that conclusory allegations such as "the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid" were insufficient because they lack any detail about how the plan evaluated benefits for those medical/surgical analogues.  *Id.*

In *William D. v. United Healthcare Ins. Co.*, No. 2:19-CV-00590-DBB-JCB, 2020 WL 4747765 (D. Utah Aug. 17, 2020), this Court dismissed Parity Act claims where the plaintiffs "offer[ed] conclusions like: 'the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits,' and United's denial 'process resulted in a disparity where equivalent mental health benefits were denied when the analogous levels of medical or surgical benefits would have been paid.'"  *Id.* at 4.  The Court explained as follows: "Each of these conclusions says the same thing—Defendant treats individuals seeking medical or surgical benefits

differently—while providing no factual allegations about such disparate treatment actually happening." *Id.* "While extensive, specific facts are not required, 'some facts are.'" *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)).

This Court dismissed the Parity Act claims in *Anne M. v. United Behav. Health*, No. 2:18-CV-808-TS, 2019 WL 1989644 (D. Utah May 6, 2019), reasoning that the "Plaintiffs fail to adequately allege[] facts to support their claim that UBH applied less rigorous standards when evaluating analogous medical/surgical claims." *Id.* at *3. The Court held that the plaintiffs' complaint—which alleged "UBH denied benefits to E. applying the Plan's medical necessity criteria for mental health disorders in a more stringent way than it applies medical necessity criteria for medical/surgical disorders"—was insufficient, explaining that the allegations "are merely conclusory allegations devoid of factual support." *Id.*

In *Michele T.*, this Court dismissed the Parity Act claim where the plaintiffs' "allegations regarding a disparity in how Oxford handles nursing home or rehabilitation treatments and how it handled J.T.'s residential treatment are ambiguous." 2020 WL 4596961 at *5. The Court found that "no facts at all have been asserted to support Plaintiffs' claim that Oxford treats medical and surgical treatments differently from mental health treatments 'based on medical necessity, geographic location, facility type, provider specialty, or other criteria.' [] This type of vague laundry list of allegations makes it sound as though Plaintiffs are merely guessing at possible disparities between" medical/surgical and mental health treatment requirements. *Id.*

Plaintiffs, here, make the same generalized, conclusory assertions in their Complaint that this Court found were insufficient in *M.N.*, *William D.*, *Anne M.*, and *Michele T. See, e.g.*, ECF No. 1 ¶61 ("The facility eligibility criteria used by BCBSIL for the intermediate level mental health

treatment benefits at issue in this case are more stringent or restrictive than the facility eligibility criteria BCBSIL applies to analogous intermediate levels of medical or surgical treatment"); *id.* ¶64 ("This process resulted in a disparity because BCBSIL denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.")  This Court has repeatedly held that such allegations fail to state a Parity Act claim.

This case is identical to *M.P. v. Bluecross Blueshield of Illinois*, No. 2:23-CV-216-TC, 2023 WL 8481410 (D. Utah Dec. 7, 2023).  Here, as in *M.P.*, "Plaintiffs allege that, because applicable generally accepted standards of care do not require 24-hour nursing for the treatment of adolescent mental health issues at a residential treatment center, they have therefore stated a Parity Act claim." *Id.* at *4.  As in *M.P.*, "Plaintiffs do not dispute that skilled nursing facilities fall within the same classification as residential treatment centers under the Parity Act." *Id.*  Therefore, the Court in *M.P.* held that "[t]he Plan's application of the same 24-hour onsite nursing requirement to a residential treatment center offering mental health care, such as Cascade, that it also imposes on treatment at a skilled nursing facility does not violate the Parity Act." *Id.*  The same is true here.

Moreover, as in *M.P.*, while "Plaintiffs suggest that there are generally accepted standards of care for adolescent mental health residential treatment that do not require 24-hour nursing services, they have not alleged what they are or how they would apply." *Id.*  The Court held that those "those conclusory allegations are insufficient." *Id.*  The same is true here, and Defendants have shown that Utah law establishes the minimum standard of care by requiring that residential treatment centers provide 24-hour care and employ professional staff including registered nurses. *See supra* at 12-13.

**4.     Plaintiffs fail to plausibly allege that the adequacy of the Plan's "network" of mental health facilities violates the Parity Act.**

Plaintiffs claim that the Plan violates the Parity Act because it provides "[in]adequate network facilities" for mental health services compared with medical/surgical services.  ECF No. 1 ¶76.  Plaintiffs do not claim that BCBSIL denied coverage because Vista was out of network. Whether Vista was in or out of BCBSIL's network had nothing to do with BCBSIL's determination that W.K.'s stay at Vista was not covered by the terms of the Plan.  At most, Plaintiffs vaguely allege they "would have had little trouble receiving in-network hospice or skilled nursing care within one-hundred miles of [their] home, but [their] options for mental health treatment in a similar radius were severely limited."  ECF No. 1 ¶20.  This is insufficient because BCBSIL did not deny any benefit because Vista was out of network.  "While extensive, specific facts are not required, 'some facts are.'"  *William D.*, 2020 WL 4747765 at *4 (quoting *Khalik*, 671 F.3d at 1193).  Here, Plaintiffs plead no facts that show Plaintiffs' benefits were denied because Vista was out of network.  To state a Parity Act claim, Plaintiffs must "plead facts involving actual, real-world discrimination, not just a theoretical possibility."  *M.N.*, 2020 WL 1644199 at *5.  The Court should dismiss the allegation that the Plan's network is insufficient because it is not relevant. BCBSIL did not deny the claim for that reason.

Moreover, the Complaint contains no factual allegations regarding the Plan's "network facilities" or how the Plan's mental health provider networks are composed differently than its networks for medical/surgical services.  This Court has stated that "the fact that [a plan's network] operated more skilled nursing facilities than residential mental health facilities fails to show how the network was inadequate for [the plaintiff]."  *Doe v. Intermountain Healthcare*, *Inc.*, No. 2:18-CV-807-RJS-JCB, 2023 WL 5395526, *28 (D. Utah Aug. 22, 2023).  "Without some facts about

… analogous medical treatment coverage, other than labels and conclusions, there can be no comparison and hence no claim." *M.N.*, 2020 WL 1644199 at *6.

Plaintiffs' network-adequacy claims do not plausibly allege a disparity between how the Plan treats mental health and medical surgical claims. *Heather E.*, 2020 WL 4365500 at *3 (noting Parity Act plaintiffs must "establish a disparity….")  The possibility that more in-network medical/surgical providers than mental health providers were within a "similar radius" to Plaintiffs' residence does not plausibly allege that the Plan's network composition discriminates against mental health services.

**B.    The Court Should Dismiss Plaintiffs' Parity Act Claim Because they are Entitled to No further Remedy.**

Plaintiffs' Parity Act Claim fails for the independent reason that they are not entitled to any equitable relief—the only relief available under the Parity Act.

### 1.    Plaintiffs lack standing to seek equitable relief.

Plaintiffs lack standing to seek equitable relief because there is no real and immediate threat of injury.  Plaintiffs do not allege that Defendants continue to deny claims for W.K.'s residential treatment, nor do they allege that W.K. will require future residential treatment. *See generally*, ECF No. 1.  Plaintiffs' alleged injury arises from past conduct—*i.e.*, BCBSIL's denial of coverage for W.K.'s stay at Evoke and Vista.  "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy" for purposes of establishing prospective injunctive relief. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also M.S. v. Premera*, No. 2:19-CV-00199-RJS-CMR, 2022 WL 2208927, *3 (D. Utah June 21, 2022) ("Defendants do not contest Plaintiffs' success on the merits of their Parity Act claim or that the

requested injunction would not be adverse to the public interest.  Rather, Defendants assert Plaintiffs have not shown they face a future risk of irreparable harm and thus both lack Article III standing and fail to meet the elements required to obtain an injunction.  The court agrees with Defendants.")  Instead, a plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way."  *Bates*, 511 F.3d at 985 (internal citation omitted).  Likewise, for purposes of declaratory relief, "past exposure to illegal conduct does not in itself show a present case or controversy … if unaccompanied by any continuing, present adverse effects."  *Lyons*, 461 U.S. at 102.[5]

Plaintiffs do not allege that they will be wronged in the future by any similar violation of the Parity Act as they claim occurred in the case at bar.  Thus, even if Plaintiffs' Parity Act Claim was sound on the merits (it is not), Plaintiffs lack standing to seek injunctive or declaratory relief, the only forms of relief available under the Act.

### 2. Plaintiffs cannot seek the equivalent of class-wide relief without complying with Rule 23.

Plaintiffs' Complaint contains no allegations that would support an injunction for the benefit of any Plan members other than Plaintiffs.  Injunctive relief that could affect other Plan members' rights—*e.g.*, modification of the Plan—predicated on "grounds that apply generally to the class" is relief "respecting the class as a whole."  *See* Fed. R. Civ. P. 23(b)(2).  But, Plaintiffs'

---

[5] The language of ERISA allowing for injunctive relief is written in the present tense, thus supporting that Congress intended to provide an equitable remedy to redress ongoing as opposed to past harms.  *See* 29 U.S.C. §1132(a)(3) (providing a cause of action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan.")

suit is not a class action. Plaintiffs may not obtain class-wide relief without complying with Rule 23's requirements.

### 3. Plaintiffs would not be entitled to equitable relief regardless of their success on their Benefits Claim.

Plaintiffs would not be entitled to equitable relief for alleged Parity Act violations regardless of their success on their Benefits Claim. This is because Plaintiffs seek the same remedy for their alleged Parity Act injury as they do for their Benefits Claim—*i.e.*, reimbursement for the costs of W.K.'s stay at Evoke and Vista. *See E.M. v. Humana*, No. 2:18-CV-00789-CMR, 2019 WL 4696281, *5 (D. Utah Sept. 26, 2019) (noting the "various forms of equitable relief" plaintiff demands "in effect amount to a determination and payment of benefits[,]" and plaintiff "thus fail[s] to point to any injury that would not be adequately remedied by the payment of benefits"); *M.S.*, 2022 WL 2208927 at *6-7 (denying the plaintiffs' requested Parity Act remedies of "surcharge, restitution, or disgorgement" that sought "to recoup their expenditure" for residential treatment or disgorgement, restitution in the same amount, because "Defendants' Parity Act violation did not result in Plaintiffs' monetary loss or Defendants' ill-gotten gain.")

If the Court determines that BCBSIL's benefits decision was incorrect, Plaintiffs will be made whole through an award of benefits—there would be "no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" as required by 29 U.S.C. §1132(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). This is the conclusion that courts have inevitably reached when addressing a Parity Act claim after deciding that the administrator should have awarded benefits. *See N.C. v. Premera Blue Cross*, No. 2:21-CV-01257-JHC, 2023 WL 2741874, *15 (W.D. Wash. Mar. 31, 2023) (dismissing Parity Act claim on summary judgment, explaining: "Because the Court awards benefits to Plaintiff under 29 U.S.C. § 1132(a)(1)(B), it concludes that

equitable relief under 29 U.S.C. § 1132(a)(3) would be inappropriate"); *K.K. v. Premera Blue Cross*, No. C21-1611-JCC, 2023 WL 3948236, *5 (W.D. Wash. June 12, 2023) ("The Court further notes that, in the only cases … where a court actually granted summary judgment to an insured for a Parity Act violation, those courts were ultimately unable to fashion relief for the beneficiary. The same appears true here.")

On the other hand, if the Court determines that the benefits decision was correct, Plaintiffs are not entitled to further relief. This Court has held that no equitable remedy is available under the Parity Act where a plaintiff does not succeed on her ERISA benefits claim. *See M.S.*, 2022 WL 2208927 at *4 (denying equitable remedy under the Parity Act because the plaintiff was not otherwise entitled to the benefits she claimed under the terms of the plan).

## C.    Plaintiffs' Benefits Claim for W.K.'s Stay at Evoke is Untimely Under the Plan's Limitations Period.

The Court should dismiss Plaintiffs' Benefits Claim for W.K.'s stay at Evoke as untimely. The Plan states that members must file suit within 180 days following an appeal decision:

> If the service representative denies your appeal, you may bring a civil action under Section 502(a) of ERISA, or pursue additional appeals, if applicable, including external review under the circumstances described above. However, except as otherwise provided in an insured contract or as describe below, no legal action may be brought after 180 days following the decision on appeal of your claim (or 180 days following the expiration of the time to take an appeal if no appeal is taken).

Ex. 1 at R8334.

BCBSIL responded to Plaintiffs' Level I appeal for Evoke on August 25, 2022. ECF No. 1 ¶24. Plaintiffs' deadline to file suit was 180 days later, February 21, 2023. Plaintiffs filed their Complaint on July 28, 2023. ECF No. 1.

The Tenth Circuit has explained that, "[b]ecause ERISA does not specify a limitations

period for filing suit," ERISA plans may contain a "contractual limitations period, which is enforceable as long as it is reasonable." *Weiss v. Banner Health*, 846 F. App'x 636, 639 (10th Cir. 2021) (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 102 (2013)). Courts have enforced 180-day (*i.e.*, six month) contractual suit limitations like the one at issue in the case at bar. For example, in *Young v. United Parcel Servs.*, *Inc. Employees' Short term Disability Plan*, 416 F. App'x 734 (10th Cir. 2011), the Tenth Circuit affirmed dismissal of an ERISA suit where the plan contained a six-month contractual limitations period. *See also*, *Sheckley v. Lincoln Nat'l Corp.*, 366 F. Supp. 2d 140 (D. Me. 2005) (six-month limitation). Courts enforce substantially shorter suit limitations periods than the 180-day period at issue here. *See, e.g.*, *Davidson v. Wal-Mart Associates Health and Welfare Plan*, 305 F. Supp. 2d 1059, 1074-75 (S.D. Iowa 2004) (45-day limitation); *Dioguardi v. Rochester Laborers Pension Fund*, 317 F. Supp. 2d 216 (W.D.N.Y. 2004) (90-day limitation). The Plan's 180-day suit limitation period is reasonable.

Because Plaintiffs filed their Complaint more than 180 days after BCBSIL's decision on their Level I appeal for Evoke, Plaintiffs' Benefits Claim for W.K.'s stay at this facility is untimely under the terms of the Plan. The Court should dismiss Plaintiffs' Benefits Claim as to Evoke.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

DATED this 26th day of January, 2024.

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton (USB # 18627)
Email: gpayton@kilpatricktownsend.com
Sean P. Murphy
Email: spmurphy@kilpatricktownsend.com
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Fax: (206) 623-6793

*Attorneys for Defendant Blue Cross Blue Shield of Illinois*

OGLETREE DEAKINS

By: */s/ Eric P. Mathisen*

Eric P. Mathisen (USB # 18810)
Email:  eric.mathisen@ogletree.com
OGLETREE DEAKINS
15 West Temple Street, Suite 950
Salt Lake City, UT 84101
Telephone: (801) 658-6048

*Attorneys for Defendant the Boeing Company Consolidated Health and Welfare Benefit Plan (Plan 635)*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY under the penalty of perjury that on January 26, 2024 I electronically

filed the foregoing DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using

the CM/ECF system which sent notification of such filing to the following:

Brian S. King
BRIAN S KING PC
420 E SOUTH TEMPLE STE 420
SALT LAKE CITY, UT 84111
(801) 532-1739
Email: brian@briansking.com

Brent J. Newton
BRIAN S KING PC
420 E SOUTH TEMPLE STE 420
SALT LAKE CITY, UT 84111
(801) 532-1739
Email: brent@briansking.com

Samuel Martin Hall
BRIAN S KING PC
420 E SOUTH TEMPLE STE 420
SALT LAKE CITY, UT 84111
801-532-1739
Email: samuel@briansking.com

Kilpatrick Townsend & Stockton LLP

By: *s/ Gwendolyn C. Payton*
        Gwendolyn C. Payton, USB #18627
        *Attorneys for Defendant Blue Cross Blue Shield*
        *of Illinois*

DEFENDANTS' MOTION
TO DISMISS – Page 25